AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. **19MJ3187**
GPS Tracking Device with SIM Card IMEI number )
359857080876394 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960, 963 | Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Paul Mello

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Paul Mello, HSI
Printed name and title

Sworn to before me and signed in my presence.

Date: 7/30/19

_____
Judge's signature

City and state: San Diego, CA                Hon. Linda Lopez, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Paul Mello, Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

### INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search a GPS Tracking Device with SIM Card IMEI number 359857080876394, as described in Attachment A (the "**Target Device**"), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952, 960 and 963, as more particularly described in Attachment B. This search supports an investigation and prosecution of Saul LEAL ("LEAL"), who is charged with committing one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was found attached to a 2000 Nissan Xterra that LEAL drove into the United States on April 16, 2019 and that was found to contain methamphetamine and cocaine. The **Target Device** is currently in the possession of Homeland Security Investigations, 2255 Niels Bohr Court, San Diego, CA 92154, within the Southern District of California.

3. Based on the information below, there is probable cause to believe that a search of **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

//
//
//

## EXPERIENCE AND TRAINING

5.  I have been employed as a Special Agent with HSI since June 2018. I am currently assigned to the San Ysidro Contraband Smuggling Group 3, which investigates violations pertaining to illegal possession, transportation, and distribution of controlled substances. I am also cross-designated by the Drug Enforcement Administration (DEA) to conduct narcotics investigations and to make arrests based on violations of Title 21 of the United States Code.

6.  As part of my training to become a Special Agent, I completed a 27-week course regarding criminal investigations at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I have attended and successfully completed the Criminal Investigator Training Program and HSI Special Agent Training at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have also completed training at the U.S. Border Patrol Academy in Artesia, New Mexico.

7.  As a HSI Special Agent, my formal training consisted of six months of residential instruction at the Federal Law Enforcement Training Center in Glynco, Georgia, which included training related to narcotics and dangerous drugs. I also learned fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and the use of electronic evidence. I have participated in training programs related to controlled substances, including but not limited to marijuana, cocaine, methamphetamine, and heroin. I have also received training in the methods used by narcotics traffickers to import, distribute, package and conceal controlled substances. I have participated in several narcotics investigations and executed arrests for drug-related offenses, including possession with the intent to distribute, transportation, and the importation of controlled substances. Additionally, through the course of my duties as a Special Agent, I have discussed narcotics smuggling and trafficking with other experienced narcotics investigators and received informal training regarding illegal drug trends and methods of operation for multi-kilogram drug smuggling, trafficking, and dealing in the San Diego area.

8. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers and traffickers will use GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    b. Drug smugglers and traffickers and their coconspirators will use GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    c. Drug smugglers and traffickers will use GPS devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

9. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data on GSM cellular devices. Depending on the device, such data can include user identity, location, phone numbers, network authorization data, personal security keys, and IP addresses. Much of the evidence generated by a smuggler's use of a GPS tracker would likely be stored on any SIM Card that has been utilized in connection with that device.

10. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that GPS devices can and often do contain electronic records, including location data and telephone numbers or identifying information for individuals accessing GPS Devices directly or remotely through phones and/or computers. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS device. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of GPS devices sometimes yields evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into

the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

b. tending to identify coconspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

c. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points; and/or

d. tending to identify the user of, or persons with control over or access to, the GPS device.

11. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months. This planning sometimes includes the use of GPS devices.

**FACTS SUPPORTING PROBABLE CAUSE**

12. On April 16, 2019, at approximately 5:50 PM, Saul LEAL entered the U.S. from Mexico at the San Ysidro Port of Entry, San Ysidro, California. LEAL, a U.S Citizen, was the driver, registered owner, and sole occupant of a 2000 Nissan Xterra bearing California license 7FQB044. In primary inspection, LEAL told the Customs and Border Protection Officer (CBPO) that he was going to work in Otay Mesa, and that he purchased the vehicle two months ago. LEAL explained that he was the only one that drives the vehicle. The CBPO inspected the vehicle with a density reader, which showed an abnormally high reading. A Narcotics and Human Detection Dog alerted to spare tire. LEAL and the vehicle were sent to secondary inspection. Subsequent inspection of the

4

1 vehicle resulted in the seizure of 55 packages, containing approximately 67.41 pounds (30.58 kilos), of methamphetamine and 5 packages, containing 12.34 pounds (5.6 kilos), of cocaine were found concealed in the spare tire, front seats, and both quarter panels.

13. Officers placed LEAL under arrest for violating Title 21 United States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance.

14. LEAL was read his *Miranda* rights, and agreed to speak to agents without an attorney present. According to LEAL, he recently replied to an advertisement on Facebook soliciting people looking for work. LEAL stated that after sending the message he was contacted by someone named "Tomas." LEAL stated Tomas brought him to meet someone he called "Supervisor" and that they wanted him to bring candy and wallets with him into the United States on his daily trips to work. LEAL stated in exchange for this service they would give him a car, a cell phone and approximately 35 dollars per trip. LEAL stated he was given the vehicle approximately 1-2 weeks ago. When agents confronted him with the fact that he told CBPOs he has had the vehicle for two months he admitted to lying to them. LEAL stated he lied to the CBPOs because he was scared and did not want them to think he was doing something wrong.

15. LEAL stated that he has brought bags of candy and sometimes beer with him in the past to make extra money. LEAL was initially reluctant to give details about Tomas and Supervisor but eventually stated that he suspected them of being involved in narcotics smuggling and admitted that Tomas offered to pay five thousand dollars if LEAL would agree to smuggle money or people across the border, LEAL insisted that he refused the offer. LEAL stated before being caught he had crossed with the vehicle about four times and attempted to get the vehicle registered under his name, however the vehicle failed smog.

16. LEAL stated he wanted to get the vehicle registered under his name as soon as possible so that he would not be questioned as much when he crossed the border. LEAL told agents after the car failed smog he dropped it off with Tomas who claimed to have fixed it. LEAL stated Tomas sent him the location on the phone he was instructed to use

5

of where to meet with Tomas. LEAL stated that Tomas rode with him right up until the San Ysidro Port of Entry. Before getting out of the car Tomas told LEAL that next time he will not be with him, however there will be a GPS tracker in the car until Tomas and the Supervisor can trust him. LEAL told agents he suspected that the car was loaded with something illegal and even gave his credit card to his wife in case he was arrested.

17. The **Target Device** was discovered in the 2000 Nissan Xterra on July 19, 2019 during an inspection by the United States' vehicle expert witness. A defense investigator was also present.

18. Based upon my experience and investigation in this case, I believe that LEAL, as well as other persons as yet unknown, were involved in the importation of narcotics. Based upon my experience and training, and in consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I also believe LEAL and others used the **Target Device** to coordinate with co-conspirators regarding the importation and delivery of the controlled substances, and to otherwise further the conspiracy both inside and outside the United States. There is also probable cause to believe that electronic records, including location data and telephone numbers or identifying information for individuals accessing the **Target Device** directly or remotely through phones and/or computers are stored in the memory of the **Target Device**, which may identify other persons involved in drug-trafficking activities.

19. I know that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as LEAL will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer

than they claimed to be involved. I respectfully request permission to search **Target Device** for data beginning on February 1, 2019, up to and including his arrest date of April 17, 2019.

## **METHODOLOGY**

20. It is not possible to determine, merely by knowing a GPS device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. GPS devices today can have functions such as full address books and can be mini-computers. An increasing number of GPS devices now allow users to access them remotely with computers or with a cellular phone and remotely erase all of the data contained on the device. For that reason, the device may only be powered in a secure environment. Many GPS devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some GPS device models using forensic hardware and software. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## **CONCLUSION**

23. Based upon my experience, training, and consultation with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe there is probable cause to conclude that

7

the **Target Device** was used to facilitate the offense of importation of controlled substances. The **Target Device** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of 21 U.S.C. §§ 952, 960, and 963.

24. Because **Target Device** was seized immediately inside the vehicle during the investigation of LEAL's smuggling activities and has been securely stored, there is also probable cause to believe that evidence of the illegal activities committed by LEAL, as described in Attachment B, continues to exist on the **Target Device**.

25. Therefore, I respectfully request that the Court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Device**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Paul Mello
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this __30__ day of July, 2019.

The Honorable Linda Lopez
United States Magistrate Judge


## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property is to be searched is the GPS Tracking Device with a SIM Card with IMEI number 359857080876394, that was found in the circuit panel of a 2000 Nissan Xterra bearing California license plate 7FQB044 that LEAL drove into the United States on April 16, 2019 (the "**Target Device**"). The **Target Device** is currently in the possession of Homeland Security Investigations, which is located at 2255 Niels Bohr Court, San Diego, CA 92154, within the Southern District of California.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in **Attachment A** includes the search of SIM cards, disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below, between the dates of February 1, 2019 and April 17, 2019. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be location data and identifying information of individuals accessing the device, including telephone numbers and identifying information for phones and/or computers remotely accessing the device:

a. tending to indicate efforts to import methamphetamine or some other controlled substances from Mexico into the United States;

b. tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine or some other controlled substances from Mexico into the United States;

c. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other controlled substances from Mexico into the United States; and/or

d. tending to identify the user of, or persons with control over or access to, the **Target Device**;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.